IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Gracie L. Adamson, ) | |
| ) | Civil Action No. 8:06-2901-HMH-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Gracie L. Adamson, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This matter was previously before the Court for judicial review and remanded to the administrative law judge for additional consideration. *Adamson v. Barnhart*, Civil Action No. 8:03-0222-20BI [Docs. 11, 12].

### RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 47 years old at the time of her alleged onset of disability on January 7, 2000. The plaintiff has a high school graduate and has an associate's degree. (R. at 99). She has past relevant work experience as a county coordinator for social services. (R. at 94.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) on January 13, 2000, alleging that she became unable to work on January 7, 2000.  (R. at 92-101.)  The applications were denied initially and on reconsideration by the Social Security Administration.  (R. at 69-79, 266-72.)  On October 12, 2000, the plaintiff requested a hearing.  (R. at 80.)  An Administrative hearing was held on September 1, 2001. (R. at 32-68.)  The administrative law judge (ALJ) before whom the plaintiff and two witnesses appeared, considered the case *de novo*, and on February 28, 2002, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended.  (R. at 17-23.)  On April 23, 2002, the plaintiff requested review of the ALJ's decision, (R. at 10), and on November 25, 2002, the Appeals Council denied the plaintiff's request for review.  (R. at 7-8.)

The plaintiff requested judicial review of the Commissioner's final decision, and on November 17, 2003, this case was remanded by Order of Judge Henry M. Herlong, Jr. to the Commissioner for further administrative proceedings.  Following a supplemental hearing on November 3, 2004, attended by the plaintiff, her attorney, and a vocational expert, the ALJ found that the plaintiff was not disabled because she could perform her sedentary, skilled past relevant work.  (R. at 300-09.)  On March 24, 2005, the plaintiff requested a review of the ALJ's decision.  (R. at 292.)  On September 30, 2006, the Appeals Council denied Plaintiff's request for review, (R. at 280-82), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making her determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2004.
>
> (2)  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2

>   (3)   The claimant's fibromyalgia is considered "severe" based upon the requirements in the Regulations (2O CFR §§ 404.1520(c) and 416.920(b)).
>
>   (4)   This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, and Regulation No. 4.
>
>   (5)   The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
>   (6)   The claimant has the following residual functional capacity: sedentary work; or work which involves occasionally lifting and/or carrying a maximum of 10 pounds; frequently lifting and/or carrying small objects; involving sitting at least six hours a day; and involving a certain amount of walking or standing, with a maximum of two hours of a day.
>
>   (7)   The claimant's past relevant work did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).
>
>   (8)   The claimant's medically determinable impairments do not prevent her from performing her past relevant work.
>
>   (9)   The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

>   the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act

precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

In a previous Order, *Adamson v. Barnhart*, Civil Action No. 8:03-0222-20BI [Docs. 11, 12], this Court requested that the ALJ perform the following inquiries upon remand: (1) assess the plaintiff's allegations of limited function and pain, considering the physical capacities evaluation completed by Dr. Holmstrom on September 12, 2002, and (2) explain the weight given to the opinion of the plaintiff's treating physician. The plaintiff complains that the ALJ failed to do either. Notwithstanding the plaintiff's belief to the contrary, the Court finds that the ALJ performed the inquiries as requested.

**I.     Allegations of Pain**

As requested by the Court, the ALJ specifically considered the plaintiff's allegations of pain and explained her reasons for discounting their credibility. (R. at 306-07.) And, while the ALJ expressly considered the plaintiff's allegations of pain at pages 306 and 307 of the Record, her decision, throughout, is written with an eye toward considering evidence

5

relevant to such an inquiry. (See, e.g., 304 (no distress), 305 (frequency of visits, complaints of pain).) Contrary to the plaintiff's accusation, the ALJ did not rely on a want of objective findings related to fybromyalgia as a basis to diminish the plaintiff's credibility. Instead she specifically recited evidence of daily activities, the effectiveness of medications, and medical records reflecting little or no distress observed in the plaintiff's behavior. These are material considerations. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (a claimant's daily activities, such as performing exercise, cooking, and doing laundry were inconsistent with the claimant's complaints of excruciating pain and inability to perform basic physical work activities); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (a claimant's activities are proper factors to consider); *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (finding that ALJ did not err by considering inconsistency between the claimant's level of treatment and her claims of disabling symptoms); *Murphy v. Sullivan*, 1994 WL 677656, at * 1-2 (4th Cir. December 05, 1994) (finding medication effective).

Although the plaintiff testified that her pain level was usually between a seven and an eight and testified that her pain level was a ten at the hearing (R. at 342), the ALJ emphasized that treatment notes generally described the plaintiff in no apparent distress (R. at 153, 155, 164, 304-305 (emergency room visit, Dr. Afulukwe visit), 403, 426), and further that prescribed medication generally managed her pain (R. at 196 ("very helpful"), 332, 343, 403). (R. at 304, 306.) The ALJ also found that the plaintiff either reported or testified to a variety of activities, such as driving, grocery shopping, doing household chores, cooking, reading, watching television, visiting with friends, attending church services, and exercising (R. at 152, 196, 352-53, 401), that were at odds with her complaints of disabling pain. (R. at 306.) The ALJ further noted that (1) the plaintiff's treatment was generally "conservative," (2) her medication levels remained constant, suggesting their effectiveness, and (3) she did not require medical assistance sooner than her regularly scheduled visits. *See Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987) (finding as relevant attempts to find relief from pain, willingness to try treatment, regular

6

contact with a doctor, and daily activities); *see also Murphy*, 1994 WL 677656, at *1-2 (finding medication effective); *Mickles*, 29 F.3d at 930 (finding that ALJ did not err by considering inconsistency between the claimant's level of treatment and her claims of disabling symptoms).

The ALJ also considered the physical capacities evaluation completed by Dr. Holmstrom on September 12, 2002, as the Court previously ordered. (R. at 305, 401 (evaluation).) The ALJ discounted that evaluation because the ALJ found it "in direct contradiction to his [Dr. Holmstrom's] contemporaneous treatment notes." *Id.* Specifically, the ALJ noted that Dr. Holmstrom's notes contained no abnormal clinical findings and that they typically reflected that the plaintiff was not in any distress. (R. at 305, 395-96, 398-99, 403.) The plaintiff argues that the ALJ's interpretation of Dr. Holmstrom's notes is incredulous insofar as those notes are, in fact, replete with evidence of the plaintiff's complaints of pain and fatigue. But, while the notes do reflect the plaintiff's own complaints of pain, there was substantial evidence for the ALJ to conclude that those complaints were not generally corroborated by Dr. Holmstrom's own observations that the plaintiff was not in distress or uncomfortable. The Court would note that Dr. Holmstrom did observe on May 30, 2002, "Clinically, she looks uncomfortable." (R. at 402.) Frankly, reasonable minds could disagree as to whether or not Dr. Holmstrom's notes were consistent with his conclusion that the plaintiff was completely disabled. The Court certainly cannot conclude that the ALJ lacked substantial evidence to diminish the weight given to Dr. Holmstrom's September 2002 evaluation.

Concerning the plaintiff's overall credibility, the evidence recited by the ALJ is substantial. Clearly, the plaintiff disagrees with the ALJ and has put forward significant evidence which might be interpreted in her favor. (R. at 154-61, 146-48 (diffuse pain), 401-404.) But, while the plaintiff or this Court might have come to a different conclusion than the ALJ based on the evidence, the ALJ performed the proper analysis as required and

recited substantial evidence to conclude as she did. *See Blalock*, 483 F.2d at 775. The Court has no basis to disturb the ALJ's decision.

## II.  Treating Physician

The Court also previously ordered the ALJ to explain, in light of the factors prescribed by 20 C.F.R. § 404.1527(d)(2), the weight afforded the opinion of Dr. Nichols October 2000 opinion that the plaintiff could not "hold a job." In her original decision, the ALJ concluded that Dr. Nichols' opinion was not entitled to controlling weight but failed to indicate what weight it should be ascribed and for what reasons. (R. at 17-23.) The plaintiff now complains that the ALJ again failed, on remand, to properly explain the weight given to Dr. Nichols' opinions. The Court disagrees.

The ALJ specifically found that Dr. Nichols' opinion should be given "little weight." ( R. at 303.) In regards to the first three factors of Section 404.1527(d)(2), the ALJ found that while there existed a treating relationship, "the actual treatment visits have been relatively infrequent" and, at the time of his disability recommendation, he had not seen the plaintiff for nine months. *Id*. In regards to factors four and five, the ALJ found that Dr. Nichols' disability determination was inconsistent with his own notes and the record as a whole, insofar as there were no restrictions placed on the plaintiff whatsoever in spite of her professed pain. (R. at 196, 198-203.)

The ALJ performed the necessary analysis as requested. It is plain that the plaintiff disagrees with her conclusion. Her disagreement with the decision, however, is immaterial in light of the substantial evidence recited by the ALJ.

## III.  ALJ's Fibromyalgia Comments

The plaintiff has noted a number of comments of the ALJ that indicate her doubt as to the general medical credibility of fibromyalgia. (See R. at 322, 338, 349.) The Court will not recite those comments here but would express concern over them. Fibromyalgia is a medically accepted impairment and can be disabling. *See, e.g., Ward v. Apfel*, 65 F.Supp.2d 1208 (D. Kan.1999). While an ALJ is free to find specific allegations of pain

unconvincing or an individual claimant's fibromyalgic condition non-severe, it is problematic to attack the general veracity of fybromyalgia as an established medical condition in the absence of evidence of record supporting that conclusion. In this case, however, the Court is satisfied that substantial evidence existed to support the ALJ's decision and that the comments cited by the plaintiff are harmless error, if error at all.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

                                        S/BRUCE H. HENDRICKS
                                        UNITED STATES MAGISTRATE JUDGE

January 22, 2008
Greenville, South Carolina

9